ORIGINAL

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| ZAKROFF AND ASSOCIATES, individually and on behalf of all others similarly situated,<br><br>                                   Plaintiffs,<br><br>     v.<br><br>UNITED PARCEL SERVICE, INC., a Delaware Corporation; UNITED PARCEL SERVICE, INC., an Ohio Corporation; UNITED PARCEL SERVICE GENERAL SERVICES CO., a Delaware Corporation; and UNITED PARCEL SERVICE CO. d/b/a UNITED PARCEL SERVICE CO. (AIR), a Delaware Corporation,<br><br>                                   Defendants. | FILED IN CLERK'S OFFICE<br>U.S.D.C. - Atlanta<br><br>APR 5 2010<br><br>JAMES N. HATTEN, Clerk<br>By:<br>          Deputy Clerk<br><br>Civil Action Number:<br>## 1:10-CV-0997<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

-RL

## COMPLAINT

This action challenges a longstanding scheme by Defendants, who are in the business of shipping items throughout the world, to charge air shipment rates and to impose an additional "air fuel" surcharge, purportedly necessary to compensate Defendants for the additional costs associated with shipment of goods by air, on shipments of goods actually shipped by ground.  Plaintiff, by and through its

1

attorneys, bring this action individually and on behalf of a Class consisting of all persons and entities who purchased Next Day Air Early A.M., Next Day Air, Next Day Air Saver, 2nd Day Air A.M. and 2nd Day Air (collectively, "air shipping services") from United Parcel Service, Inc., a Delaware corporation, United Parcel Service, Inc., an Ohio corporation, United Parcel Service General Services Co., a Delaware corporation, and United Parcel Service Co. d/b/a United Parcel Service Co. (Air), a Delaware corporation (collectively referred to as "UPS" or "Defendants"), and paid the air shipping rate and/or an air fuel surcharge, but had their items shipped by ground transportation instead.  UPS's charging air shipping rates and air fuel surcharges on items actually shipped by ground constitutes a violation of, *inter alia*:

   a. the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961, *et seq*.; and

   b. state statutes prohibiting the use of unfair and/or deceptive acts and practices.

## OVERVIEW

1.     Defendants sell their customers comparatively expensive "air" shipping services for domestic letters, packages, and freight under a variety of

2

names, such as "Next Day Air" and "2nd Day Air."  Plaintiff and other Class

members (the "Class") purchased these services from UPS.

2.     Charges for Next Day Air and 2nd Day Air are substantially more

expensive than charges for ground delivery.  The price to ship a package between

two locations by air often is two to three times the price of sending the same

package by ground.

3.     In or about December 2000, UPS instituted a "temporary fuel

surcharge," which is still in effect.  There are separate surcharges for ground and

air transportation.   If a customer contracts to ship a package via ground

transportation, it is charged a ground fuel surcharge.  Likewise, if a customer

contracts to ship a package via air transportation, it is charged an air fuel

surcharge.

4.     The ground fuel surcharge fluctuates depending on a national index

based on the price of diesel fuel.

5.     The air fuel surcharge fluctuates depending on a national index based

on the price of kerosene jet fuel.

6.     For example, UPS's ground surcharge on October 3, 2005 was 3.5%

of the delivery charge and the air surcharge was 12.5%.  On September 1, 2008,

3

UPS's ground surcharge was 10.25% of the delivery charge and the air surcharge was 34.5%.

7.     Since at least 2007, and likely for much longer, UPS has engaged in an organized and nationwide campaign to identify all air deliveries that feasibly could be diverted to ground without missing the delivery deadlines, and has rerouted those shipments for ground delivery whenever possible, while still charging the premium rates and surcharges associated with air transportation. Thus, UPS has been charging Class members a steep premium for "air" services it never provided.  This wrongful practice is known internally at UPS as the "Air-In-Ground" program.

8.     As a deliberate result of the Air-In-Ground program, UPS imposed the air fuel surcharge on items that were not shipped by plane.

9.     In addition, because UPS's air shipping rates are higher than the ground shipping rates, Plaintiff and members of the Class are charged the percentage fuel surcharge on an already inflated shipping rate.

10.     UPS did not and does not disclose to customers that they were paying for air services they never actually received.

4

## JURISDICTION AND VENUE

11.    Plaintiff brings this action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et seq.,* and for violations of various state unfair trade practices statutes.

12.    Pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, this Court has subject matter jurisdiction over this nationwide class action because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which a member of the Class or Plaintiff is a citizen of a state different from UPS. *See* 28 U.S.C. § 1332(d)(2)(A).

13.    This Court also has subject matter jurisdiction over Count I of this Complaint pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a) and (c) as the case raises federal questions.

14.    This Court has personal jurisdiction over the defendants headquartered in this District and over other defendants under applicable long-arm statutes. UPS is a person within the context of those statutes that directly or through its agents conducts substantial, continuous and systematic economic activities in this district.  Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's

5

claims occurred in this district, UPS has agents and transacts substantial business in this district, and many members of the Class reside or do business in this district.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391, because UPS engages in substantial conduct relevant to Plaintiff's claims within this District and has caused harm to members of the Class residing in this District.

## THE PARTIES

**Plaintiff**

16.     Plaintiff Zakroff and Associates ("Zakroff") has a principal place of business in Bethesda, Maryland.  Plaintiff was exposed to Defendants' fraudulent charges and suffered injury in fact and was damaged as a result of the unfair practice described in this Complaint.

**Defendants**

17.     Defendant United Parcel Service, Inc. is a publicly held company (NYSE, UPS) incorporated under the laws of the State of Delaware with its principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia. It is the parent UPS corporate entity ("Parent UPS").   Parent UPS and the other defendants, which are subsidiaries, effectively conduct business collectively as one integrated unit known as UPS.   UPS's business activities and operations are

6

managed and controlled from Parent UPS's principal place of business in Atlanta, Georgia.

18.     Defendant United Parcel Service, Inc. is a corporation incorporated under the laws of the State of Ohio with its principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia.

19.     Defendant United Parcel Service General Services Co., is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia.

20.     Defendant United Parcel Service Co. d/b/a United Parcel Service Co. (Air) is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia.

21.     Substantially all the administrative and operational decisions are made at UPS's principal place of business in Atlanta, where all four entities named as defendants in this action have registered their principal place of business.  The UPS subsidiaries perform acts on behalf of and for the benefit of Parent UPS. Specifically, the Air-In-Ground scheme was created and implemented by Parent UPS.  At all material times, Parent UPS has managed, directed, controlled, and ratified all material and substantive aspects of the Air-In-Ground. Subject to Parent

UPS's direction and control, the Air-In-Ground scheme represents the collective actions of the Defendants.

22.     United Parcel Service was founded in 1907 as American Messenger Company.  UPS claims to be the "largest package delivery company in the world, in terms of both revenue and volume."  In 2008, UPS delivered an average of 15.5 million pieces per day worldwide, for a total of 3.92 billion packages that year. Total revenue in 2008 was $51.5 billion.   UPS operates a ground fleet of approximately 107,000 vehicles, which operates throughout the contiguous United States.  UPS also operates a fleet of approximately 570 aircraft.

23.     UPS's U.S. domestic package business consists of air and ground delivery of small packages - up to 150 pounds in weight - and letters to and from all 50 states.  The domestic package business is built on an integrated air and ground pick-up and delivery network.  All packages - domestic or international, commercial or residential, air or ground - are processed through one integrated network.

24.     UPS operates its aircraft in a hub and spoke pattern in the U.S.  The principal hub in the U.S., known as Worldport, is located in Louisville, Kentucky. UPS is able to sort over 300,000 packages per hour in the Worldport facility.  In 2008, UPS continued work on its Worldport facility expansion that will increase its

sorting capacity by 37% to 416,000 packages per hour.  UPS also has regional air hubs in Columbia, South Carolina; Dallas, Texas; Hartford, Connecticut; Ontario, California; Philadelphia, Pennsylvania; and Rockford, Illinois.  These hubs house facilities for the sorting, transfer, and delivery of packages.

25.    UPS has direct pickup at customer locations, "pick up" mailbox locations, and also locations known as "UPS Stores."  After shippers turn over their packages, they are transported by ground to the nearest regional UPS Center ("Service Centers"). The Service Centers then sort the packages for air shipment or ground delivery and send them along to their next destination.

26.    Prior to 2001, many of the UPS Stores were owned and operated by independent third party franchisees as part of the UPS shipping network.

27.    In 2001, UPS acquired Mail Boxes Etc., Inc., a major franchisor of retail shipping locations. Many of these franchisee locations were then re-branded as additional UPS Stores. Other locations continued to operate under the name of Mail Boxes Etc., Inc.  The UPS and Mail Boxes Etc., Inc. stores, totaling more than 4,400, are independently owned and operated by third party franchisees as part of the UPS network.  These locations are hereinafter referred to as the "Retail Franchises."

9

28.     In addition to the Retail Franchises, UPS has entered into business and contractual relationships with Office Depot, Inc. and Staples, Inc. to provide additional UPS locations.  UPS has approximately 1,100 locations in Office Depot stores and 1,300 locations in Staples stores in the United States.  These locations are hereinafter referred to as the "UPS Alliance Locations."

29.     UPS also franchises thousands of other outlets in locations such as convenience stores.  These locations operate as additional independent franchisees are hereinafter referred to as the "Additional Shipping Outlets."

## CLASS ALLEGATIONS

30.     Plaintiff brings this action on behalf of itself and members of the following Class:

> All persons or entities who purchased air shipping services from UPS and paid an air shipping rate and/or an air fuel surcharge, but had their shipment shipped by ground transportation.  Excluded from the Class are U.S. government entities and instrumentalities of the U.S. government, Defendants, and any subsidiaries and affiliates of Defendants.

31.     Plaintiff does not know the exact size of the proposed Class as that information is in control of UPS, but believes there are thousands and perhaps millions of Class members located throughout the United States, making the Class so large and geographically diverse that joinder is impracticable.

32.     Defendants' fraudulent and misleading conduct has caused a common injury to members of the Class.

33.     Defendants have acted on grounds generally applicable to the Class, which makes final injunctive relief with respect to the Class as a whole appropriate.

34.     Plaintiff is a member of the Class and its claims are typical of other members of the Class who likewise sustained economic injury and were damaged through Defendants' actions.

35.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased air shipping services from UPS and has a common and non-antagonistic interest in recovering damages caused by Defendants' fraudulent and misleading conduct and in enjoining and deterring future unlawful activity by Defendants.

36.     There are questions of law and fact common to the Class, and they will predominate over any individual questions. The common legal and factual issues include, but are not limited to, the following:

(a)     whether UPS has engaged in a pattern of racketeering activity by billing for air shipments while actually shipping by ground delivery;

11

(b)    whether UPS has committed wrongful acts of wire fraud and mail fraud in furtherance of its racketeering activity; whether UPS has made false and misleading statements with the intent to defraud, deceive and induce Plaintiff and the Class;

(c)    whether UPS has fraudulently failed to disclose its practice of selling air services but shipping by ground;

(d)    whether UPS has engaged in unfair business practices and false advertising;

(e)    whether, and to what extent, UPS damaged customers who purchased air services, but had their shipments delivered by ground transportation;

(f)    whether UPS has been unjustly enriched as a result of its practice of diverting shipments from air shipping to ground transportation;

(g)    the time period during which Defendants have engaged in this fraudulent and misleading scheme;

(h)    the identities of co-conspirators or association-in-fact enterprise participants in the fraudulent and misleading scheme;

(i)    the manner and means of this fraudulent and misleading scheme; and

(j)    whether Plaintiff and the Class are entitled to relief, including but not limited to actual damages, multiple damages, punitive damages, and attorneys' fees.

37.    Plaintiff's claims are typical of the claims of the Class because all such claims arise out of the common wrongful conduct of UPS's scheme to charge air shipping rates while using ground delivery for such shipments.

38.    Plaintiff and its attorneys will fairly and adequately protect the interests of the Class.  Plaintiff has no interests antagonistic to the Class. Plaintiff has retained Class counsel experienced in the prosecution of complex litigation, including complex class actions, and such counsel will fully, fairly, and adequately represent Plaintiff and the Class.

39.    This class action is appropriate for certification under F.R.C.P. 23(b)(3) because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class members is impracticable. This class action is manageable and will provide adjudication, economies of scale, and supervision by one Court.   The proposed Class presents no difficulties of

13

management that would preclude its maintenance as a class action. No superior alternative exists for the fair and efficient adjudication of this controversy.

**Tolling of Applicable Statutes of Limitations and Estoppel**

40.  UPS had and continues to have superior knowledge to the Plaintiff and the Class regarding its Air-In-Ground program. However, UPS concealed this practice and the fraudulent air shipment charges.

41.  As a result of UPS's concealment, applicable statutes of limitations have been tolled until Plaintiff's recent discovery of the Defendants' fraudulent practice.

42.  UPS's active concealment includes but is not limited to the following:

(a)  falsely stating on the invoices or billings that the shipment was delivered by air when, in fact, it was delivered by ground;

(b)  placing air shipment labels on items which were actually delivered by ground; and

(c)  concealing UPS's knowing use of ground shipment for shipments designated for air. UPS's computer tracking system available for use by customers specifically identifies the purchased level of service (air shipment), but does not disclose when air shipments were actually sent by ground delivery.

14

**UPS's Wrongful "Air-In-Ground" Scheme**

43.    "Air-In-Ground" is UPS's program of diverting customer shipments from air transportation to ground transportation while billing its customers for air transportation. The purpose of the Air-In-Ground program is to collect the higher price charged for air transportation while actually transporting items more cheaply by ground.

44.    Prior to the Air-In-Ground program, there was a policy at UPS which required air shipments to be shipped by plane and ground shipments to be shipped by truck.

45.    Prior to implementing the Air-In-Ground program, UPS performed a computer analysis of origin and destination ZIP Codes and the Time-In-Transit between the various ZIP Codes. The analysis allowed UPS to determine whether ground delivery could get air packages to their destinations on time. If UPS could timely transport an air package by ground, the package was then diverted to ground delivery.

46.    The Air-In-Ground program uses specially developed transit-time tables called "Sort Charts" to divert customer shipments from air transportation to ground transportation. A Sort Chart is a list of ZIP Codes that identifies the destinations that can be reached by ground delivery in one or two days from each

15

of UPS's Regional Service Centers. Unique Sort Charts are posted at each UPS Regional Service Center. The label on the customer's package provides the destination ZIP Code. The first three digits of the destination ZIP Code are examined. If the destination ZIP Code is on the Sort Chart and the "air" package can arrive on time on a ground truck, UPS will divert the package.

47.     The Air-In-Ground program and its Sort Charts were developed by UPS more than a decade ago. UPS established and set goals concerning the percentage of air shipments that would be diverted to the Air-In-Ground program in each region of the country. UPS's determined efforts to devise, implement, and monitor the Air-In-Ground program demonstrate its premeditated and willful fraud against Plaintiff and the Class members.

48.     When a customer selects the level of service (air or ground), he does not know that UPS has already pre-determined whether the item will actually be shipped by air or ground. UPS does not tell the customer when air service is selected that the item will in fact be shipped by ground.

49.     The rerouting of shipments under the scheme is automatic. UPS – but not the customer – possesses all the information needed to identify air shipments that can be diverted to ground delivery at the time the order is placed. When a customer presents an item to UPS for air shipment, UPS knows, based on ZIP

16

Codes, that certain of those items will be shipped by ground. By use of the Sort Charts, UPS knows that all items sent between certain ZIP Codes will be delivered by ground. Nonetheless, UPS continues to offer and charge for air services that it knows will not be provided.

50.    UPS's air transportation costs are much higher than its ground transportation costs. By selling air transportation to customers and diverting the shipment to ground transportation, UPS has been able to fraudulently and dramatically increase its profits.

51.    In many cases, the price of the air services UPS charged Plaintiff and Class Members was substantially higher than the price of the ground services actually provided.

52.    Since its inception, UPS's fraudulent Air-In-Ground program has been carried out on a continuous and national basis. Upon information and belief, the Air-In-Ground program has resulted in false and fraudulent overcharges to Plaintiff and the Class. This practice is designed to divert tens of thousands of air shipments to ground every day and has allowed UPS to reap millions of dollars of unjustified fees.

53.    At all relevant times, UPS suppressed and concealed the true facts relating to the Air-In-Ground program. For example, shippers such as Plaintiff can

17

track a shipment on the UPS website, but the website information does not reveal and is designed to conceal whether the item was actually sent by air or ground. In contrast, UPS's internal tracking system shows whether a purchased air shipment was sent by air or ground. This allows UPS to identify and track the number and percentage of air shipments which are deliberately diverted to ground delivery pursuant to the Air-In-Ground program. UPS invoices falsely state that the shipment was by air when it was in fact sent by ground delivery.  In some instances, UPS also affixes labels to items which further deceives the shipper into believing that the item will be or has been shipped by air.  UPS employees ignore these labels for items that can be diverted to ground.

54.    Due to UPS's knowing and active concealment of the Air-In-Ground program, Plaintiff and the Class could not have reasonably discovered UPS's wrongful and fraudulent diversion of air shipments to ground delivery.

**The Fraudulent Aviation Fuel Surcharge**

55.    In approximately 2000, UPS began assessing aviation fuel surcharges for air shipments and diesel fuel surcharges for ground shipments. Aviation fuel surcharges are substantially higher than diesel fuel surcharges. The aviation fuel surcharges were supposed to compensate UPS for the rising cost of *jet fuel,* but were instead part of its scheme to fraudulently charge Plaintiff and the Class

18

additional money for air shipments that were delivered by ground. These additional fraudulent and unjustifiable overcharges damaged Plaintiff and the Class and substantially increased UPS's fraudulently-obtained revenues from its Air-In-Ground scheme.

**Specific Examples of Fraudulent UPS Charges Paid By Plaintiff**

56.     Plaintiff Zakroff has a direct shipping account with UPS. UPS identifies it by shipper number, FF 9391438.

57.     Plaintiff Zakroff has been charged for air shipments and an air fuel surcharge when the shipment was actually delivered by ground on a number of occasions. For example, on October 20, 2008, Zakroff shipped an item by Next Day Air Commercial and was charged an air shipment rate and a jet fuel surcharge when, on information and belief, the delivery was made by ground.

58.     Similarly, on March 23, 2010, Zakroff shipped an item by Next Day Air Commercial Letter and was charged an air shipment rate and a jet fuel surcharge when, on information and belief, the delivery was made by ground.

**RICO ALLEGATIONS**

59.     UPS engaged in a fraudulent scheme, common course of conduct and conspiracy to charge its customers for air shipping services that were never used and for jet fuel that was never used.

60.    To achieve these goals, UPS, its agents, employees, and co-conspirators identified below entered into agreements to sell air shipping services that were never used and for jet fuel that was never used.  As a direct result of their conspiracy and fraudulent scheme, Defendants were able to extract fees and overcharges from Plaintiff and members of the Class.

**Co-Conspirators and Association-In-Fact Enterprise**

61.    Various other persons, firms, corporations and entities have participated with Defendants as unnamed co-conspirators and association-in-fact enterprises with Defendants in the fraudulent and misleading conduct alleged in this Complaint.  In order to engage in the offenses alleged, these people or entities have performed acts and made statements in furtherance of Defendants' illegal activities.

62.    UPS contracts, does business with and/or owns retail outlets which serve package shipping customers.  This includes the United Parcel Service, Inc., The UPS Stores, Mail Boxes, Etc. and UPS Customer Centers ("The UPS Enterprise").

63.    The UPS Enterprise is an ongoing and continuing organization consisting both of UPS and other corporations and individuals associated for the common or shared purpose of selling, promoting and/or marketing air shipping

services to its customers through deceptive and misleading advertising and billing practices, and deriving profits from those activities.

64. The UPS Enterprise functions by providing air shipping services, many of which are non-fraudulent. However, Defendants and co-conspirators, through the UPS Enterprise, have engaged in a pattern of racketeering activity which also involves a fraudulent scheme to increase revenue for UPS through the sale of services and goods which are never received.

65. The UPS Enterprise engages in and affects interstate commerce because it involves activities across state boundaries, such as the marketing, promotion, advertisement and sale of air shipping services.

66. Within the UPS Enterprise, there is a common communication network by which co-conspirators share information. The UPS Enterprise uses this common communication network for the purpose of marketing, soliciting and selling air shipping services to the general public.

67. Each participant in the UPS Enterprise has a systematic linkage because there are contractual relationships, financial ties and continuing coordination of activities. Through the UPS Enterprise, Defendants engage in consensual decision-making to implement their fraudulent scheme and to function as a continuing unit for the common purpose of extracting payment for air shipping

21

fees and air fuel surcharges. Furthermore, the UPS Enterprise functions as a continuing unit with the purpose of assisting with, perfecting and furthering their wrongful scheme to sell air shipping services and air fuel surcharges to its customers.

68.    While Defendants participate in and are members of the UPS Enterprise, they also have a separate and distinct existence.

69.    Defendants fail to disclose the nature of their conspiracy and sell air shipping services and levy air fuel surcharges. To limit the substantive information customers receive at the point of sale, Defendants have to maintain control over information customers get at the point of sale. UPS does this by:

(a)    not indicating on its internet tracking service whether a shipment is actually being routed by air or ground;

(b)    not indicating on receipts or invoices whether a shipment is actually being routed by air or ground;

(c)    not disclosing that it has a policy of rerouting shipments by ground when they can arrive at the destination by a guaranteed time via ground transportation;

(d)    developing uniform sales and marketing materials selling air services;

(e)   instructing employees and other co-conspirators not to share the fact that items contracted to be shipped via air are shipped via ground;

(f)   instructing employees and other co-conspirators not to share the fact that air fuel surcharges are imposed when an item is shipped via ground;

(g)   imposing and collecting overcharges for items contracted to be shipped by air but rather shipped by ground; and

(h)   imposing and collecting overcharges for air fuel surcharges on items that are shipped by ground.

70.   Although UPS sells delivery services appropriate for the customers that desire their shipment be delivered in a certain amount of time, the UPS Enterprise has targeted consumers who wish to have their item shipped by air to ensure timely delivery.

71.   The UPS Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants have engaged.

## COUNT I: RICO

72.   Plaintiff repeats and realleges all allegations contained in this Complaint as if set forth separately in this section.

73.    Plaintiff's claims arise under 18 U.S.C. §1962(c)-(d), which provide

in relevant part:

> (c)    It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity…
>
> (d)    It shall be unlawful for any person to conspire to
> violate any of the provisions of subsection…(c) of
> this section.

74.    At all relevant times, Plaintiff, each Class member, and each

Defendant was a "person" within the meaning of 18 U.S.C. §1961(3), because

Plaintiff, each Class member, and each Defendant was "capable of holding a legal

or beneficial interest in property."

75.    In violation of 18 U.S.C. §1962(c), Defendants have conducted or

participated, directly and indirectly, in the conduct of the affairs of the unfair and

deceptive Air-In-Ground program alleged in this Complaint "through a pattern of

racketeering activity," as defined by 18 U.S.C. §1961(5).

76.    As alleged in this Complaint, Defendants committed thousands if not

millions of violations of the federal mail and wire fraud statutes, 18 U.S.C. §§1341

and 1343, beginning at least as early as 2007--the exact date unknown to Plaintiff

but known by Defendants--continuing until the present, in furtherance of their

24

common purpose to defraud Plaintiff and other people using UPS air services.  For each package shipped via ground where a customer ordered air shipping, Defendants, by billing Plaintiff and members of the Class via mail and the Internet, engaged in an act of mail or wire fraud.  Specific incidents of mail and wire fraud are alleged above and are reincorporated and realleged in this paragraph.

77.    Although UPS agreed and continues to agree with customers to provide shipping services via air, UPS substitutes cheaper ground transportation.

78.    Beginning at least as early as 2007 and likely much earlier--the exact date unknown to Plaintiff but known by Defendants--continuing until the present, UPS charged air shipping rates for many deliveries.  In many cases, UPS will agree with a customer to ship a by air, but will divert the shipment to ground.  Despite shipping by ground, UPS charges the customer the air shipping rate instead of the ground shipping rate.  The air shipping rate can be many times the cost of the ground shipping rate.  Customers of UPS who order air shipping and have their items diverted to ground shipping are needlessly and unfairly paying for the difference in the cost of the air and ground shipping rates.

79.    Defendants knowingly and consistently hid the fact that they shipped items by ground transportation that they agreed to ship by air.  UPS also hid the fact that they charged higher air shipping rates instead of the appropriate ground

25

shipping rates. Plaintiff and members of the Class were damaged in their property through these actions and Defendants obtained money and property as a result of these statutory violations.

80. Beginning around 2000--the exact date unknown to Plaintiff but known by Defendants—and continuing until the present, UPS assessed fuel surcharges to its customers. Despite shipping an item by ground, UPS charges the customer an air fuel surcharge instead of a ground fuel surcharge for certain shipments designated as air shipments. The air fuel surcharge can be many times the cost of the ground fuel surcharge. Customers of UPS who order air shipping but receive ground shipping are needlessly and unfairly paying for the difference in the cost of the air and ground fuel surcharges.

81. Defendants knowingly and consistently hid the fact that they shipped items by ground transportation that they agreed to ship by air. UPS also hid the fact that they levied higher air fuel surcharges when items were shipped by ground. Plaintiff and members of the Class were damaged in their property through these actions and Defendants unlawfully obtained money and property as a result of these statutory violations.

82. Without the universal application of the scheme detailed in this Complaint and Defendants' fraudulent concealment, Plaintiff could not have

26

reasonably discovered UPS's fraudulent diversion of air shipments to ground delivery.

**Pattern of Racketeering Activity**

83.    Defendants have wrongfully participated in the conduct of an enterprise through a pattern of racketeering activity which has directly injured Plaintiff and the Class in their business and property in violation of 18 U.S.C. § 1962(c).  Defendants set both the prices and the terms and conditions of sale for air shipping services, and Parent UPS manages the conduct of its subsidiaries and/or affiliates in the shipping network in other ways.

84.    The pattern of racketeering activity has been ongoing on a regular and continuous basis for many years.

85.    Air-In-Ground is UPS's program of diverting customer packages from air transportation to ground transportation while billing its customers for air transportation. The purpose of the Air-In-Ground program is to collect the higher price charged for air transportation while actually transporting packages more cheaply by ground.

86.    Despite UPS's agreement to provide *air* shipping services for a fee, UPS deliberately substitutes far less expensive *ground* shipping services and conceals the same from its customers who paid for air shipping. By selling air

transportation to customers but using ground transportation, UPS has been able to increase its profits fraudulently and dramatically.

87.     In approximately 2000, UPS began assessing aviation fuel surcharges for air shipments and diesel fuel surcharges for ground shipments. Surcharges are substantially higher than diesel fuel surcharges. UPS assesses these aviation fuel surcharges on customers selecting Next Day Air or 2nd Day Air. The aviation fuel surcharges are wrongfully imposed on Plaintiff and the Class members for air shipments that are knowingly diverted to ground. By imposing aviation fuel surcharges, UPS charges Plaintiff and the Class for the cost of jet fuel that was never expended.

**Association-In-Fact Enterprise**

88.     The enterprise is an association-in-fact which includes UPS, the Retail Franchises, UPS Alliance Locations, and the Additional Shipping Outlets. The association-in-fact alleged herein constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

89.     The association-in-fact enterprise is a group of separate and distinct entities associated together for the common purpose of shipping packages in the United States through the UPS shipping network. Many other entities, including

affiliates of UPS and other third party entities, are also part of the UPS shipping network. The enterprise is engaged in, and its activities affect, interstate commerce.

90.  This association-in-fact enterprise constitutes an ongoing organization based upon the continuing contractual and other business relationships between UPS, the Retail Franchises, UPS Alliance Locations, and the Additional Shipping Outlets.  The association-in-fact enterprise has a structure separate and distinct from the pattern of racketeering activity.

91.  UPS has conducted the affairs of the association-in-fact enterprise through a pattern of racketeering activity as defined in 18 U.S.C. §1961(l) and (5). As stated, UPS sets both the prices and the terms and conditions of sale for air shipping services as well as manages the conduct of the affiliates in the shipping network in other ways.

**Predicate Acts of Mail and/or Wire Fraud**

92.  UPS participated in and/or controlled the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  Acts of mail fraud and/or wire fraud are committed each time Defendants send Plaintiff and the Class an invoice for payment of charges for air shipments and aviation fuel surcharges on a shipment that UPS diverted to ground delivery.  These acts are in violation of 18 U.S.C. § 1341 (mail fraud) and/or 18 U.S.C. § 1343 (wire fraud).  Defendants have

committed these predicate acts of mail fraud and/or wire fraud with a specific intent to defraud and in furtherance of the scheme to defraud.

93.    UPS transmitted the fraudulent bills for air shipments wrongfully diverted to ground delivery to Plaintiff and to the Class on hundreds of thousands of occasions through the U.S. Mail and/or transmission via wire facilities (i.e., by facsimile or electronically) beginning around 2000--the exact date unknown to Plaintiffs but known by Defendants—and continuing until the present, in violation of §§ 1341 and 1343.

94.    UPS has also fraudulently used the U.S. Mail and wires in violation of 18 U.S.C. §§ 1341 and 1343 to facilitate the Air-In-Ground program in the following additional ways:

(a)    for oral and written communications between customers and UPS;

(b)    for internal oral and written communications between UPS officers and employees;

(c)    for oral and written communications with Retail Franchises, UPS Alliance Locations, and Additional Shipping Outlets; and

(d)    to receive payment from Plaintiff and the Class for the wrongful and fraudulent UPS charges. The specific number of predicate acts cannot

30

fully be alleged without access to UPS's books and records but is estimated to be hundreds of thousands of occurrences.

95.    UPS's wire fraud and mail fraud has been in furtherance of the UPS scheme or artifice to defraud or obtain money by means of false or fraudulent pretenses concerning the practice of diverting air shipments to ground delivery and charging the customer for air shipment.

96.    UPS has utilized said wire fraud and mail fraud to conduct an ongoing pattern of racketeering. The racketeering acts are directly related to each other and have a common purpose. The wrongful conduct of diverting air packages to ground delivery and charging the customer for air shipment (Air-In-Ground program) has been ongoing and continuous since at least and will continue in the future, absent relief in this action.

97.    UPS could not have carried out its Air-In-Ground program without conducting the same fraudulent activities through all branches of its shipping network (the enterprise). Had UPS not implemented the Air-In-Ground program for all shipments, regardless of how they were commissioned, the fraud it was perpetrating would have come to light. Therefore, UPS's fraud through the enterprise was a necessary part of the Air-In-Ground program as a whole.

31

## COUNT II: UNJUST ENRICHMENT

98.    Plaintiff repeats and realleges all allegations contained in this Complaint as if set forth separately in this section.

99.    UPS received from Plaintiff and Class members money from their purchase of shipping services which were excessive and unreasonable, and are the result of Defendants' deceptive conduct.   The air shipping services were fraudulently sold by UPS and misled Plaintiff and the Class into paying for services that were both more expensive and unnecessary than the ground shipping services that were actually used.   Additionally, UPS fraudulently overcharged customers when it charged a more expensive air fuel surcharge despite the fact that the item was shipped via ground transportation. As a result, Plaintiff and the Class have unknowingly conferred a benefit on UPS, through payments to UPS for services and fuel that were never used.

100.   UPS accepted the benefits conferred by Plaintiff and members of the Class, and have retained those benefits by not providing an adequate refund or other remedy, with full knowledge and awareness that, as a result of Defendants' wrongdoing, Plaintiff and members of the Class were not receiving services of the value represented by Defendants and that reasonable persons would have expected.

101.  Retaining the benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the benefits unjust and inequitable.  Because Defendants' retention of the benefits is unjust and inequitable, Plaintiff and members of the Class are entitled to and hereby seek disgorgement and restitution of Defendants' wrongful profits, revenue and benefits in a manner established by the Court.

102.  Plaintiff, individually and on behalf of the putative Class, restates and incorporates herein the preceding paragraphs of the Complaint.

103.  As a direct and proximate result of UPS's conduct, UPS has been unlawfully and unjustly enriched in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and all members of the Class, respectfully prays:

    (a) That the Court certify the proposed Class under F.R.C.P. 23(a) and 23(b);

    (b) Awarding Plaintiff and the Class damages, together with interest and costs on each count of the complaint;

    (c) Awarding Plaintiff and the Class multiple damages where allowed by law;

    (d) That Plaintiff and the Class be awarded their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law;

(e) That the Court order preliminary and permanent injunctive relief enjoining UPS, their partners, joint venturers, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with them directly or indirectly, or in any manner, from in any way engaging in the practices set forth herein;

(f) That the Court award appropriate attorneys' fees, pursuant to 18 U.S.C. §1964 and other applicable statutes;

(g) That the Court award punitive damages, to be awarded to Plaintiff and the Class where allowed by law;

(h) That the Court award restitution of all funds acquired by Defendants' unfair business practices, including disgorgement of profits;

(i) That the Court order an imposition of a constructive trust upon all monies and assets Defendants have acquired as a result of its unfair practices;

(j) That the Court order such other and further relief as the Court deems just and proper under the circumstances.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: April 5, 2010

Martin D. Chitwood
Georgia Bar No. 124950
Craig G. Harley
Georgia Bar No. 326813
Meryl W. Roper
Georgia Bar No. 238919
**CHITWOOD HARLEY HARNES LLP**
1230 Peachtree St NE
2300 Promenade II
Atlanta, Georgia  30309
Telephone: (404) 873-3900
Fax: (404) 876-4476
mchitwood@chitwoodlaw.com
charley@chitwoodlaw.com
mroper@chitwoodlaw.com


Thomas G. Shapiro
Edward F. Haber
Charles E. Tompkins
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Fax: (617) 439-3939
tshapiro@shulaw.com
ehaber@shulaw.com
ctompkins@shulaw.com

*Attorneys for Plaintiff*

35